CV 12-2584

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x

TERRELL THOMAS,

                        Plaintiff,

          v.

CONSOLIDATED EDISON COMPANY OF NEW YORK,
INC., FEINROSE ASSOCIATES, A GENERAL
PARTNERSHIP, FEINROSE DOWNING, LLC, DOWNING
STREET REALTY LLC, ROSETTA INVESTMENTS, N.V., A
& P REAL PROPERTY, LLC, PATHMARK STORES, INC.,
MARPAT LIQUOR CORP., PJI, INC., EMSTAR PIZZA, INC.,
QWICK CONVENIENCE AND CARDS, INC., M & I CARDS,
INC., PAYLESS SHOESOURCE, INC., MCDONALD'S
CORPORATION, JCD FOODS, INC., UNITED RETAIL
INCORPORATED, VERIZON COMMUNICATION INC.,
DUNKIN DONUTS INCORPORATED, WHITEHOUSE
PLAZA DONUTS, INC.,SUBWAY REAL ESTATE CORP.,
STRATTON SUBWAY CORP., MR. CHAN'S INC.,
WHITESTONE CHECK CASHING CORP., THE PAY-O-
MATIC CORP., ASTORIA FINANCIAL CORPORATION,
LUCKY Q & X, LLC, WENDY'S OLD FASHIONED
HAMBURGERS OF NEW YORK, INC., RADIOSHACK
CORPORATION

                        Defendants.
---------------------------------------------------------------- x

**ECF CASE** BRODIE, J.

**COMPLAINT** LEVY, M.J

**CV**

SUMMONS ISSUED

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK
2012 MAY 22  PM 3:02
FILED
CLERK

## COMPLAINT

      Plaintiff Terrell Thomas (hereafter referred to as "plaintiff"), by counsel, Hanski Law

Practice, LLC, as and for plaintiff's Complaint in this action against Defendants, Consolidated

Edison Company of New York, Inc. ("ConEd"), Feinrose Associates, a General Partnership

("Feinrose"), Feinrose Downing, LLC ("Feinrose-Downing"), Downing Street Realty LLC

("Downing"), Rosetta Investments, N.V. ("Rosetta"), A & P Real Property, LLC, ("A&P"),

Pathmark Stores, Inc. ("Pathmark"), Marpat Liquor Corp. ("Marpat"), PJI, Inc. ("PJI"), Emstar

Pizza, Inc. ("Emstar-Papa Johns'"), Qwick Convenience and Cards, Inc. ("Qwick"), M & I

Cards, Inc. ("M&I"), Payless Shoesource Inc. ("Payless"), McDonald's Corporation

1

("McDonald's"), JCD Foods, Inc. ("JCD"), United Retail Incorporated ("Avenue"), Verizon

Communication Inc.("Verizon"), Dunkin Donuts Incorporated ("Dunkin"), Whitestone Plaza

Donuts, Inc. ("Whitestone Plaza"), Subway Real Estate Corp. ("Subway"), Stratton Subway

Corp. ("Stratton"), Mr. Chan's Inc. ("Chan's"), Whitestone Check Cashing Corp.

("Whitestone"), The Pay-O-Matic Corp. ("Pay-O-Matic"), Astoria Financial Corporation

("Astoria"), Lucky Q & X, LLC ("King's Chef"), Wendy's Old Fashioned Hamburgers Of New

York, Inc. ("Wendy's"), Radioshack Corporation ("Radioshack") (together collectively referred

to as "defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.     This lawsuit opposes pervasive, ongoing and inexcusable disability discrimination

by the defendants. In this action, plaintiff seeks declaratory, injunctive and equitable relief, as

well as monetary damages and attorneys' fees, costs and expenses to redress defendants'

unlawful disability discrimination against plaintiff, in violation of Title III of the Americans with

Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations, the New

York State Executive Law (the "Executive Law"), § 296, New York State Civil Rights Law, §

40, and the Administrative Code of the City New York (the "Administrative Code"), § 8-107.

Plaintiff also alleges claims for Negligence. As explained more fully below, defendants own,

operate, lease, lease to and control places of public accommodation that violates the above-

mentioned laws.

2.     These defendants made a financial decision to ignore the explicit legal

requirements for making their places of public accommodation accessible to persons with

disabilities -- disrespecting the civil rights of people with disabilities, including plaintiff, and

expecting that they would not be called to task for their actions. In so doing, defendants made a

2

calculated, but unlawful, decision that disabled customers, including plaintiff, are not worthy. The day has come for defendants to accept responsibility. This action seeks to right that wrong via recompensing plaintiff and making defendants' places of public accommodation fully accessible so that plaintiff can finally enjoy the full and equal opportunity that defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188 and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of plaintiff's rights under the ADA. The Court has supplemental jurisdiction over plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because defendants' acts of discrimination alleged herein occurred in this district and defendants' places of public accommodation that are the subject of this action is located in this district.

## PARTIES

5. At all times relevant to this action, plaintiff Terrell Thomas has been and remains currently a resident of the State and City of New York.

6. At all times relevant to this action, plaintiff Terrell Thomas has been and remains a wheelchair user. Plaintiff suffers from illnesses that inhibit walking and restrict body motion range and movement. As a result of these conditions, plaintiff cannot travel without the use of a wheelchair, and is also has restricted use of plaintiff's arms and hands.

7. Defendant Downing owns, operates, and/or leases out real property containing multiple premises located at 31 – 35 31st Road and 133-50 Whitestone Expressway in Queens County, New York (the "Downing Shops"), to multiple tenants, including but not limited to

3

Feinrose Downing, King's Chef, Radioshack and Wendy's. Defendant ConEd owns, operates, and or/leases out real property containing multiple premises located at 31-06 to 31-22 Farrington Street, as well as on Downing Street in Queens County, New York (hereinafter referred to as the "Farrington Shops") to Feinrose. Defendant Feinrose owns, operates and/or leases out each of the Downing Shops (through Feinrose Downing, an entity controlled by Feinrose), real property on 32nd Avenue in Queens County, New York, and the Farrington Shops, which Feinrose leases out to A&P. Defendant A&P owns, operates, and/or leases out the Farrington Shops to multiple tenants, including but not limited to Pathmark, Marpat, Emstar-Pappa Johns', Qwick, M&I, and Payless.

8.      Defendant Rosetta owns, operates, and leases out real property multiple premises located at 30-01 to 30-33 Stratton Street in Queens County, New York (the "Stratton Shops") to multiple tenants, including but not limited to, McDonald's, JCD, Avenue, Verizon, Dunkin, Chan's, Whitestone Plaza, Subway, Stratton Subway Corp, Whitestone, Pay-O-Matic, and Astoria (hereinafter, ConEd, A&P, Pathmark, Rosetta, Feinrose Downing, Feinrose, and Downing are collectively referred to as the "LL Defendants").

9.      Each of the Downing Shops, the Farrington Shops, and the Stratton Shops, as well as additional premises are marketed and operated in unison through easements, and upon information and belief shared use agreements, declarations of conditions covenants & restrictions and/or other property restrictions as one shopping center known as the Whitestone Shopping Center (hereinafter referred to as the "Whitestone Shopping Center").

10.     The Whitestone Shopping Center is a facility that houses five or more sales or rental establishments, which are places of public accommodation, and is therefore a shopping center or shopping mall within the meaning of 28 C.F.R. § 36.401.

11.     The Whitestone Shopping Center also contains a series of buildings on a common site that are under the common ownership or common control of the LL Defendants, or which were otherwise developed either as one project or as a series of related projects, housing five or more sales or rental establishments.  28 C.F.R. § 36.401.

12.     Each of the defendants is licensed to, and does, business in New York State.

13.     At all relevant times, defendants operate and/or lease property at the Whitestone Shopping Center from one of the LL Defendants, or sublease space from one of the other defendants.  Upon information and belief, each of the LL Defendants and the defendant that is their respective tenant has a written lease agreement.

14.     Upon information and belief, each of defendants PJI, Inc., McDonald's Corporation, Dunkin Donuts Incorporated, and Subway Real Estate Corp., (also hereinafter collectively referred to as the "Franchisor Defendants") and each of defendants Emstar Pizza, Inc., JCD Foods, Inc., Whitehouse Plaza Donuts, Inc., Stratton Subway Corp. (also hereinafter collectively referred to as the "Franchisee Defendants") have a written franchise agreement, and/or other agreements through which the Franchisor Defendants operate and/or control their respective Franchisee Defendants' premises, and/or the activities of their respective Franchisee Defendants' premises, including but not limited to the operation, design and/or construction of their respective Franchisee Defendants' premises.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

15.     Each of the premises contained in the Whitestone Shopping Center are commercial facilities within the meaning of the ADA (42 U.S.C. § 12181(2) and 28 C.F.R. § 36.104), as each of these premises are, or are part of, a facility intended for nonresidential use, and the facilities operations affect commerce.

5

16.     Each of the premises contained in the Whitestone Shopping Center are also commercial spaces within the meaning of the Executive Law (§ 292(13)) and the Administrative Code (§ 8-102(13)) as each of them are spaces in a building that is used, occupied and/or designed for the sale, processing and/or distribution of personal property.

17.     Each and all of the defendants are public accommodations as they own, lease, lease to, control or operate places of public accommodation located at the Whitestone Shopping Center within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)) and their operations affect commerce.

18.     Numerous architectural barriers exist at defendants' places of public accommodation that prevent and/or restrict access to plaintiff, a person with a disability.

19.     At some time after January 1992 and/or since the effective date of Administrative Code §§ 27-292 et seq. (hereinafter also referred to as "Local Law 58"), each of the defendants made alterations to their respective places of public accommodation at the Whitestone Shopping Center.

20.     At some time after January 1992 and/or since the effective date of Administrative Code §§ 27-292 et seq., each of the defendants made alterations to the primary function areas of their respective places of public accommodation at the Whitestone Shopping Center.

21.     The services, features, elements and spaces of defendants' places of public accommodation are not readily accessible to, or usable by plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design ("1991 Standards") or the revised final regulations implementing Title III of the ADA adopted by the

United States Department of Justice in 2010 as the 2010 Standards for Accessible Design ("2010 Standards"), or the Administrative Code.

22.    Each of the LL Defendants have failed to ensure that their respective lessees' places of public accommodation are in compliance with the 1991 Standards and/or the 2010 Standards.

23.    Each of the Franchisor Defendants have failed to design, build, alter, and otherwise ensure that the premises of their respective franchisees among the Franchisee Defendants are in compliance with the 1991 Standards and/or the 2010 Standards, and/or that such Franchisee Defendants maintain and operate their respective premises in compliance with the 1991 Standards and/or the 2010 Standards.

24.    Within a year of commencing this action, plaintiff made attempts to access the Whitestone Shopping Center, and the places of public accommodation therein, including but not limited to each of the defendants' places of public accommodation.

25.    Because of defendants' failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, plaintiff was, and continues to be, unable to enjoy equal and complete access to the Whitestone Shopping Center, and each defendants' place of public accommodation.

26.    Defendants' places of public accommodation have not been designed, constructed, maintained, operated or altered in compliance with the 1991 Standards or the 2010 Standards; the Administrative Code; or the Building Code of the City of New York ("BCCNY").

27.    Barriers to access that plaintiff encountered and/or which exist at the defendants' places of public accommodation include, but are not limited to, the barriers identified below, and result from:

7

A. Defendants fail to provide an accessible route to the primary entrance for each of the respective real property parcels that form the Whitestone Shopping Center from the public sidewalk and/or street. See Administrative Code § 27-292.5(b).

B. Defendants fail to provide an accessible primary entrance to their respective places of public accommodation. See Administrative Code §§ 27-292.5(a) and 27-357(d).

C. Defendants fail to provide an accessible route from any public transportation stops, accessible parking places, public streets or sidewalks to the site or building entrances that coincides with the general circulation path used by patrons to the public accommodation thereby relegating plaintiff to a "second class citizen" entrance and exit. See 1991 Standards §§ 4.3.2(1), 4.1.2(1), 4.1.1(1) and 4.14.1; §§ 206.1, 206.2, 206.3, 206.2.4, 206.4; and BCCNY § 1104.5.

D. Defendants Pathmark, McDonalds and JCD fail to provide accessible entrances in a number at least equivalent to the number of exits required by the New York Building and Fire Codes. See 1991 Standards §§ 4.1.3(8)(a)(ii), 4.1.3(9), 4.3.10; 2010 Standards § 207.1; and Administrative Code §§ 24-354, 24-365, and 27-365.

E. LL Defendants fail to provide an accessible entrance to the defendants. See 1991 Standards § 4.1.3(a)(iii); 2010 Standards §§ 206.4.5, 404; and Administrative Code § 27-362; and BCCNY § 1105.1.6.

F. LL Defendants unlawfully utilize a service entrance as the designated accessible entrance. See 1991 Standards §§ 4.1.3(8) and 4.14.2; and 2010 Standards § 206.4.

G. Defendant Radioshack fails to provide an accessible egress from the public entrance as the egress to the sidewalk is blocked by theft protection barrier devices thereby forcing plaintiff to egress the property in an unsafe and humiliating manner. See 1991 Standards § 7.4, 4.1.2; and 2010 Standards §§ 206.8, 207.1; and BCCNY § 1104.6.

H. Defendants fail to provide that no changes in level exist inside the required minimum maneuvering clearance at the ground space in front of their respective public entrance doors. See 1991 Standards§§ 4.37, 4.3.8, 4.5.2; and 2010 Standards §§ 305.2, 302, 304.2, 404.2.4.4.

I. LL Defendants fail to provide that there is one accessible route connecting all the public accommodations within the site. See 1991 Standards §§ 4.3.2, 4.1.2(2), 4.1.3(1); and 2010 Standards §§ 206.1, 206.2, 206.2.2, 206.2.4; BCCNY §§ 1101.2, 1104.2.

J. Defendants fail to provide that the interior space of their respective places of public accommodation is accessible and usable to the disabled plaintiff. See Administrative Code §§ 27-292.10 and 27-292.5.

8

K.  Defendants Subway, Stratton, Qwick, and M&I fail to provide an accessible interior route
of 36 inches in width in all locations available to non-disabled customers.  See 1991
Standards § 4.3.3; 2010 Standards § 403.5.1.

L.  Defendants Subway, Stratton, Qwick, and M&I fail to provide the minimum required
maneuvering clearance inside the public accommodation from which to make a 180-
degree turn.  See 1991 Standards § 4.2.3; and 2010 Standards §§ 304.3.1, 304.3.2.

M.  Defendants Pathmark, PJI, Emstar-Papa Johns', Qwick, M&I, Whitestone, Pay-O-Matic,
King's Chef, and Astoria fail to provide that at least one of each type of sales and/or
service counter is accessible and dispersed throughout its premises.  See 1991 Standards
§ 7.2; 2010 Standards §§ 227.3, 227.1, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

N.  Defendants Pathmark, PJI, Emstar-Papa Johns', Qwick, M&I Whitestone, Pay-O-Matic,
King's Chef, and Astoria, fail to provide a portion of the sales and/or service counter that
is no greater than 36 inches above the finish floor and no less than 36 inches in length
thereby making it impossible or exceedingly difficult for the plaintiff to conduct a
transaction in a manner similar to non-disabled customers. See 1991 Standards § 7.2;
2010 Standards §§ 227.1, 227.3, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

O.  Defendants Qwick and M&I fail to provide sufficient clear space of 30 inches by 48
inches in front of the sales and/or service counter from which to conduct the transaction.
See 1991 Standards § 4.2.4.1, 7.1, 7.2; and 2010 Standards §§ 305, 904.4.

P.  Defendants Qwick and M&I fail to provide an accessible route to customers to approach
the sales and/or service counters thereby making it impossible or exceedingly difficult for
the plaintiff to conduct a transaction.  See 1991 Standards §§ 7.1, 4.3; and 2010
Standards §§ 904.2, 403.

Q.  Defendants Subway and Stratton fail to provide an accessible route to customers to
approach the self-service shelves thereby making it impossible or exceedingly difficult
for the plaintiff to obtain items for purchase. See 1991 Standards §§ 7.1, 4.3; 2010
Standards §§ 225.2.2, 402; and BCCNY § 1109.8.2.

R.  Defendants McDonald's, JCD, Subway, Stratton, Wendy's, PJI, Emstar-Papa Johns',
Dunkin, Astoria, King's Chef, Whitestone and Pay-O-Matic fail to provide at least 5% of
the work and use table surfaces provided to customers are accessible and dispersed
throughout its premises. See 2010 Standards §§ 226.1, 226.2, 902; and BCCNY §
1109.11.

S.  Defendants Astoria, Whitestone, and Pay-O-Matic, fail to provide that the top height of
the check writing surface is between 28 and 34 inches above the finished floor.  See 2010
Standards §§ 902.3, 904.3.3; and BCCNY § 1109.11.

T. Defendant Pathmark fails to provide that the reach ranges for the operable controls of the customer credit card terminal are accessible. See 1991 Standards §§ 4.2.5, 4.2.6; and 2010 Standards § 308.

U. Defendant Pathmark fails to provide that at least one of each type of function counter is accessible and dispersed throughout its premises. See 1991 Standards §§ 7.2, 7.3(1); 2010 Standards §§ 227.3, 904; and BCCNY § §§ 1109.12, 1109.12.3.

V. Defendant Pathmark fails to provide the minimum number of accessible and open check out aisles. See 1991 Standards § 7.3(1); 2010 Standards §§ 227.2, 904.3; BCCNY § 1109.12.2.

W. Defendant Pathmark fails to provide the minimum clear width for the check out aisles. See 1991 Standards §§ 7.3(2); 4.2.1; 2010 Standards §§ 227.5, 403; and BCCNY § 110912.5.

X. Defendant Pathmark fails to provide a check out counter surface that is no greater than 38 inches above the finished floor and a dividing lip that is no greater than 2 inches above the counter surface. See 1991 Standards § 7.3(2); and 2010 Standards § 904.3.2.

Y. Defendant Pathmark fails to display an International Symbol of Accessibility sign next to the aisle number sign that is mounted above the designated accessible check out aisle counter. See 1991 Standards §§ 7.3(3), 4.30, 4.30.7; and 2010 Standards §§ 216.11, 703.7.2.1, 904.3.

Z. Defendants McDonald's, JCD, Subway, Stratton, King's Chef, Wendy's, PJI, Emstar-Papa Johns', and Dunkin, fail to provide that at least one and not less than 5% of seating and standing spaces and/or dining surfaces are accessible and dispersed throughout the premises. See 1991 Standards §§ 4.1.3(18), 4.32, 5.1; 2010 Standards §§ 226, 226.1, 226.2, 902.1; BCCNY §§ 1108.2.9.1, 1109.11; and Administrative Code § 27-292.10(3).

AA. Defendants Subway, Stratton, PJI, Emstar-Papa Johns', and Dunkin, fail to provide an accessible route of at least 36 inches of minimum width to all dining areas and seating. See 1991 Standards §§ 5.3, 4.32.2; 2010 Standards §§ 403, 206.2.5, 902.2; BCCNY § 1108.2.9.

BB. Defendants McDonald's, JCD, Subway, Stratton, Wendy's, PJI, Emstar-Papa Johns', and Dunkin, fail to provide the minimum required maneuvering clearances of level and clear space in front of the seating for dining. See 1991 Standards §§ 4.32.2, 5.3; and 2010 Standards §§ 305.3, 802.1.2, 802.1.3, 902.2, 903.1, 903.2, 902.4.1.

CC. Defendants McDonald's, JCD, Subway, Stratton, Wendy's, PJI, Emstar-Papa Johns', and Dunkin, fail to provide a space for dining where plaintiff's wheelchair does not overlap the accessible route and/or a space that adjoins an accessible route. See 1991 Standards §§ 4.32.2, 5.1, 5.3; and 2010 Standards §§ 305.6, 802.1.4.

DD.    Defendants McDonald's, JCD, Subway, Stratton, Wendy's, PJI, Emstar-Papa Johns', and Dunkin, fail to provide a space for dining where plaintiff's wheelchair does not the overlap the general circulation path and/or emergency egress routes. See 1991 Standards §§ 5.1, 5.3, 4.32.2, 4.2.4; and 2010 Standards § 802.1.5.

EE.    Defendants McDonald's, JCD, Chan's, Subway, Stratton, King's Chef, Wendy's, PJI, Emstar-Papa Johns', and Dunkin, fail to provide the International Symbol of Accessibility at its designated accessible seating. BCCNY § 11010.1(9).

FF.    Defendants Subway, Stratton, PJI, Emstar-Papa Johns', and Dunkin, fail to provide dining tables and/ surfaces that are at an accessible height of between twenty-eight inches and thirty-four inches above the finished floor. See 1991 Standards §§ 4.32.4, 5.1; and 2010 Standards § 902.3.

GG.    Defendants McDonald's, JCD, Subway, Stratton, Wendy's, PJI, Emstar-Papa Johns', and Dunkin, fail to provide dining tables and/ surfaces that have the minimum required knee clearances. See 1991 Standards §§ 4.32.3, 5.1; and 2010 Standards §§ 305.4, 306.

HH.    Defendants McDonald's, JCD, Subway, Stratton, Wendy's, PJI, Emstar-Papa Johns', and Dunkin, fail to provide dining tables and/or surfaces that have the minimum required toe clearances. See 1991 Standards §§ 4.32.3, 5.1; and 2010 Standards §§ 305.4, 306.

II.    Defendants McDonald's, JCD, Subway, Stratton, Wendy's, PJI, Emstar-Papa Johns', and Dunkin, fail to provide that its self-service shelves and dispensing devices for condiments, food, beverages, dishware, tableware, utensils and napkins are within the accessible reach ranges thereby depriving plaintiff of items that are available to non-disabled customers. See 1991 Standards §§ 5.6 and 4.2; 2010 Standards §§ 904.5.1, 308, 227.4.

JJ.    Defendants Subway and Stratton fail to provide that its self-service shelves and dispensing devices for condiments, food, beverages, dishware, tableware, utensils and napkins have the minimum required maneuvering clearance of level and clear space for a front or side approach thereby depriving plaintiff of items that are available to non-disabled customers. See 1991 Standards §§ 5.1, 5.6; and 2010 Standards §§ 309, 305.3, 802.1.2, and 802.1.3.

KK.    Defendants McDonald's, JCD, Subway, and Stratton fail to provide that the controls for the dispensing devices for condiments, food, beverages, dishware, tableware, utensils and/or napkins are usable to the disabled plaintiff thereby depriving plaintiff of items that are available to non-disabled customers. See 1991 Standards § 4.27; and 2010 Standards §§ 205.1, 309.3, 309.4, and 309.5.

LL.    Defendant Pathmark fails to provide that the vending machines including the DVD Express machine are on an accessible route and that the controls are within the

11

accessible reach ranges. See 1991 Standards §§ 4.2, 4.2.5, 4.2.6, and 5.8; and 2010 Standards §§ 228, 228.1, 309.

MM.    Defendants fail to provide that the cross slope of the pedestrian pathway to their respective entrance doors does not exceed the maximum permissible slope of 2% in all directions. See 1991 Standards § 4.8.6;  and 2010 Standards § 405.3.

NN.    Defendants fail to use the least steep possible slope for the pedestrian pathway/sidewalk adjacent to their respective entrance doors. See 1991 Standards § 4.8.2; and 2010 Standards § 405.

OO.    Defendants fail to provide the minimum maneuvering clearance of level and clear space adjacent to the handle side of their respective non-automatic door exits. See 1991 Standards §§ 4.1.3(7), 4.13.6; and 2010 Standards §§ 404.2.4.1, 305.3.

PP.    Defendants fail to provide the minimum maneuvering clearance of level and clear space adjacent to the handle side of their respective non-automatic doors is free of obstructions. See 1991 Standards §§ 4.1.3(7), 4.13.6; and 2010 Standards §§ 404.2.4.3, 305.3.

QQ.    Defendants Pathmark, McDonald's, JCD, Subway, Stratton, and Wendy's fail to provide an accessible public toilet room. See Standards §§ 4.23, 4.18, 4.19, 4.17, 4.24, 4.22 and 4.1.3(11); 2010 Standards §§ 213.1, 213.2, 603.1; Administrative Code §§ 27-292(b), 27-292.12, RS-16, and P104.09(c); and BCCNY § 1109.2.

RR.    At the inaccessible public toilet room, defendants Pathmark, McDonald's, JCD, Subway, Stratton, and Wendy's fail to provide and display the International Symbol of Accessibility with the required information indicating the location of a designated and nearest accessible public toilet room. See Standards §§ 4.1.6(3)(e)(iii), 4.1.2(7), 4.30, 4.30.6, 4.30.7; 2010 Standards §§ 216.3, 216.8, 703, 703.7.2.1; BCCNY § 1110.1.

SS.    Defendants Pathmark and Wendy's fail to provide the minimum required maneuvering clearance of level and clear floor space inside the toilet room. See 1991 Standards §§ 4.16.2, 4.17.3, 4.23.3, 4.22.3; and 2010 Standards §§ 604.3, 604.8.1.1; and Administrative Code §§ 27-292, RS-16, and P104.09(c).

TT.    Defendants Pathmark and Wendy's fail to provide that the minimum required floor space free of obstructions and/or fixtures exists inside the toilet room. See 1991 Standards § 4.16.2, 4.23.3, 4.22.3; and 2010 Standards § 604.3.2.

UU.    Defendants McDonalds, JCD, Wendy's, and Pathmark fail to provide that the pipes under the lavatory are insulated, nonabrasive, or otherwise protected against contact thereby exposing plaintiff to severe personal injury. See 1991 Standards §§ 4.19.4, 4.22.6, 4.24.6; and 2010 Standards §§ 213.3.4, 606.5.

VV.     Defendants McDonalds and JCD fail to provide that the bottom edge of the reflecting surface of the mirror above the lavatory is no greater than 40 inches above the finished floor. See 1991 Standards §§ 4.19.6, 4.23.6, 4.22.6; and 2010 Standards §§ 213.3.4, 603.3, 213.3.5.

WW.     Defendants McDonalds, JCD, Wendy's, and Pathmark fail to provide the minimum required unobstructed floor space in front of the lavatory in the public toilet room. See 1991 Standards §§ 4.19.3, 4.22.3, 4.23.2 4.24.5; and 2010 Standards §§ 213.3.4, 606.2, 305, 306.

XX.     Defendants fail to provide that their respective bathroom doors do not swing into the minimum required unobstructed floor space for the lavatory. See 1991 Standards §§ 4.22.2, 4.22.3, 4.23.2, 4.23.3, 4.23.7, 4.24.5; and 2010 Standards §§ 213.3.4, 603.2.3, 606.2.

YY.     Defendant Wendy's fails to provide that the top of the counter surface for the lavatory is no greater than 34 inches above the finished floor. See 1991 Standards §§ 4.19.2, 4.24.2; and 2010 Standards § 606.3.

ZZ.     Defendant Wendy's fails to provide that the operable controls for dispensers, dryers and other devices above or adjacent to the lavatory are within the accessible reach ranges. See 1991 Standards §§ 4.22.7 and 4.23.7; 2010 Standards §§ 308, 309.3; and Administrative Code § 27-292.16.

AAA.    Defendants McDonald's and JCD fail to provide the minimum required knee clearance of level and clear floor space under the lavatory. See 1991 Standards §§ 4.22.6, 4.19.2; and 2010 Standards §§ 213.3.4, 305.4, 306, 606.2.

BBB.    Defendants McDonald's, JCD, and Pathmark fail to provide that the faucet handles in the lavatory are operable without tight pinching or grasping. See 1991 Standards §§ 4.19.5, 4.24.7; and 2010 Standards §§ 213.3.4, 606.4, 309.4.

CCC.    Defendant Pathmark fails to provide an accessible route to all the fixtures within the public toilet room. See 1991 Standards §§ 4.1.3(1), 4.3.3, 4.3.8, and 4.22.3, 4.23.3.

DDD.    Defendants Subway and Stratton fail to provide that the hook inside the toilet room is located within an accessible reach range. See 2010 Standards §§ 213.3.7, 308, 309.3, 603.4, 604.8.3; and BCCNY § 1109.8.3.

EEE.    Defendants Wendy's and Pathmark fail to provide that the flush control is located on the open side of the water closet. See 1991 Standards § 4.16.5; and 2010 Standards § 604.6.

FFF.    Defendant Pathmark fails to provide that rear and side toilet grab bars inside the toilet room. See Standards §§ 4.1.3(11), 4.17.3, 4.17.6, 4.22.4, 4.16.4; 2010 Standards § 604.5, 604.8.1.5, 609; and Administrative Code RS-16 § P104.09(c).

13

GGG.  Defendant Subway and Stratton fail to provide that the grab bar for the sidewall is at least 42 inches in length and extends more than 54 inches from the wall behind the toilet. See Standards §§ 4.17.6, 4.16.4; and 2010 Standards § 604.5.1, 604.8.1.5, 609.

HHH.  Defendant Pathmark fails to provide that the grab bar behind the toilet is at least 36 inches in length and of sufficient length from the toilet centerline. See Standards §§ 4.17.6, 4.16.4, 4.17.3; and 2010 Standards § 604.5.2.

III.  Defendant Pathmark fails to provide that the tops of the grab bars are between 33 inches and 36 inches above the finished floor. See 1991 Standards §§ 4.16.4, 4.17.3, 4.17.6; and 2010 Standards § 609.4; Administrative Code RS-16 § P104.09(c).

JJJ.  LL Defendants fail to provide that the designated car accessible parking spaces have a minimum width of 96 inches wide that contains clear unobstructed space and which have an adjacent access aisle that is at least 60 inches wide of clear unobstructed space. See 1991 Standards §§ 4.6.3, 4.6.2; 2010 Standards §§ 502.2, 502.3, 502.3.1; the Administrative Code § RS 4-6.

KKK.  LL Defendants fail to provide that the car accessible parking spaces have an adjacent International Symbol of Accessibility sign designating the spaces as accessible parking spaces and mounted at the minimum required height above the ground surface. See 1991 Standards § 4.1.2(7)(a), 4.30.7, 4.6.4; 2010 Standards §§ 502.6, 216.5, 703.7.2.1, 703.5.6; BCCNY § 1106.6.2.6; and the Administrative Code § 27-292.19(b).

LLL.  LL Defendants fail to provide the minimum required number of van accessible parking spaces with an adjacent International Symbol of Accessibility sign designating the spaces as van accessible parking spaces and mounted at least 60 inches above the ground surface. See 1991 Standards § 4.1.2(5)(a), 4.6.1, 4.6.4; and 2010 Standards §§ 208.2.4, 216.5, 502.6, 703.7.2.1; BCCNY § 1106.5.

MMM.  LL Defendants fail to provide that the designated van accessible parking spaces are at least 96 inches wide and have an adjacent access aisle that is at least 96 inches wide of clear unobstructed space or a 132-inch wide parking space with an adjacent access aisle of 60 inches of clear unobstructed space. See 1991 Standards §§ 4.1.2(5)(b), 4.1.2(7)(a), 4.6.3; 2010 Standards §§ 502.2, 502.3, 502.3.1; and the Administrative Code § RS 4-6.

NNN.  LL Defendants fail to provide that the access aisles are marked with a sign reading "NO PARKING ANYTIME". See Building Code of New York State § 1106.5; 2010 Standards § 502.3.3.

OOO.  LL Defendants fail to provide that the designated accessible parking spaces and access aisles have slopes no greater than 2% in any direction. See 1991 Standards § 4.6.3; and 2010 Standards §§ 502.4, 302.

PPP.    LL Defendants fail to provide that the accessible parking spaces are dispersed and located on the shortest accessible routes of travel to the accessible entrances. See 1991 Standards § 4.6.2; 2010 Standards §§ 208.3, 208.3.1; BCCNY § 1106.6.

QQQ.    LL Defendants fail to provide an accessible route from the access aisles to the sidewalk. See 1991 Standards § 4.7; and 2010 Standards §§ 406, 405.

RRR.    LL Defendants fail to provide curb ramps that are not built up inside the access aisle and/or that do not project into vehicular traffic.  See 1991 Standards § 4.7.6; and 2010 Standards § 406.5.

SSS.    LL Defendants  fail to provide that the slope of the curb ramp onto the sidewalk is no greater than 8.33%. See 1991 Standards §§ 4.7.2, 4.8.2; and 2010 Standards § 405.2.

TTT.    LL Defendants fail to provide that the slopes of the flared sides of the curb ramps are no greater than 10%.  See 1991 Standards § 4.7.5; and 2010 Standards § 406.3.

UUU.    LL Defendants fail to provide that a parked vehicle cannot block a portion of the curb ramps. See 1991 Standards § 4.7.8; and 2010 Standards § 406.5.

28.    Upon information and belief, a full inspection of the defendants' places of public accommodation will reveal the existence of other barriers to access.

29.    Defendants' failure to comply with the law and make their places of public accommodation accessible denies plaintiff the opportunity to participate in or benefit from services or accommodations on the basis of disability.

30.    Defendants have not satisfied their statutory obligation to ensure that their policies, practices, and procedures for persons with disabilities are compliant with the laws.  Nor have defendants provided or made reasonable accommodations for persons with disabilities.

31.    Each of the LL Defendants have failed to ensure that their respective real property and premises, as well as their respective lessees' premises are in compliance with the 1991 Standards, the 2010 Standards; or the Administrative Code.

32.    The barriers to access within each of the defendants' places of public accommodation continue to exist.

33.    Plaintiff resides in the neighborhood where defendants' places of public accommodation are located and patronizes places in the neighborhood.

34.    Plaintiff intends to patronize the defendants' places of public accommodation several times a year after they become fully accessible and compliant with the 1991 Standards or the 2010 Standards and the Administrative Code.

## FIRST CAUSE OF ACTION
### (Violations of the Americans with Disabilities Act)

35.    Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. As a direct and proximate result of plaintiff's disability, plaintiff uses a wheelchair for mobility, and is also has restricted use of plaintiff's arms and hands.

36.    The ADA imposes joint and several liability upon each of the defendants and no defendant can escape liability to the plaintiff by transferring their obligations to the other by contract (i.e. lease agreement). 28 C.F.R. 36.201(b).

37.    The ADA also imposes liability on those who fail to design, construct, or alter commercial facilities/spaces, so that such facilities are readily accessible to and usable by individuals with disabilities to the maximum extent feasible. §42 U.S.C. 12183, 28 C.F.R. 36.401 and 36.402.

38.    Defendants' have and continue to subject plaintiff to disparate treatment by denying plaintiff full and equal opportunity to use their places of public accommodation all because plaintiff is disabled.

39.    By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable or desired as patrons of their places of public accommodation.

16

40.     Defendants' places of public accommodation are not fully accessible and fail to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

41.     Upon making alterations to their places of public accommodation, defendants failed to make them accessible to plaintiff to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406.

42.     Upon information and belief, when defendants made alterations to the primary function areas of their places of public accommodation, defendants failed to make the paths of travel to the primary function areas accessible to plaintiff, in violation of 28 C.F.R. § 36.403.

43.     By failing design and construct their respective commercial facilities containing their places of public accommodation, so that they are readily accessible to and usable by individuals with disabilities, and to the extent of any alterations, so that the places of public accommodation are readily accessible to and usable by individuals with disabilities to the maximum extent feasible, defendants have discriminated against plaintiff on the basis of disability in violation of § 303 of the ADA.  § 42 U.S.C. 12183, 28 C.F.R. 36.401 and 36.402.

44.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304. It would be readily achievable to make defendants' places of public accommodation fully accessible.

45.     By failing to remove the barriers to access where it is readily achievable to do so, defendants have discriminated against plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and in violation of 28 C.F.R. § 36.304.

46.     In the alternative, defendants have violated the ADA by failing to provide plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

47.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.* and 28 C.F.R. §36.101 *et. seq.*

48.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on defendants ConEd, Rosetta, Feinrose, and Downing to repave, reconstruct, repair, and maintain the public sidewalk that abuts their respective real property.  As a result, within the meaning of the ADA, defendants ConEd, Rosetta, Feinrose, and Downing control, manage and operate the abutting public sidewalk, which includes the portion of the sidewalk constituting the entrance/s to the Whitestone Shopping Center. LL Defendant's failure to construct and maintain accessible entrances from the public sidewalks to the Whitestone Shopping Center and their tenants' places of public accommodation constitutes disability discrimination in a violation of the ADA.

49.     Defendants have and continue to discriminate against plaintiff in violation of the ADA by maintaining and/or creating inaccessible places of public accommodation.

### SECOND CAUSE OF ACTION
### (Violation of New York State Executive Law)

50.     Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

51.     Plaintiff has various illnesses that separately and together prevent the exercise of normal bodily functions in plaintiff; in particular, the life activities of walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

52.     Defendants' have and continue to subject plaintiff to disparate treatment by denying plaintiff equal opportunity to use their places of public accommodation all because plaintiff is disabled.

53.     By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and, moreover, not desired as patrons of their places of public accommodation.

54.     Defendants discriminated against plaintiff in violation of New York State Executive Law § 296(2), by maintaining and/or creating inaccessible places of public accommodation.

55.     Defendants have also discriminated, and continue to discriminate, against plaintiff in violation of New York State Executive Law § 296(5)(b) by designing, creating and/or maintaining an inaccessible commercial space.

56.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2)(c)(iii).

57.     In the alternative, defendants have failed to provide plaintiff with reasonable alternatives to barrier removal as required in violation of Executive Law § 296(2)(c)(iv).

58.     It would be readily achievable to make defendants' places of public accommodation fully accessible.

59.     It would not impose an undue hardship or undue burden on defendants to make their places of public accommodation fully accessible.

60.     As a direct and proximate result of defendants' unlawful discrimination in violation of New York State Executive Law, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

19

61.     Plaintiff has suffered damages in the amount of at least **$50,000.00 (FIFTY THOUSAND DOLLARS)** from each defendant and the total amount shall be determined at trial before a jury.

### THIRD CAUSE OF ACTION
### (Violation of the Administrative Code of the City of New York)

62.     Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

63.     Plaintiff suffers from various illnesses that separately and together, impair plaintiff's bodily systems - in particular, the life activity of both walking and body motion range -and thus plaintiff has a disability within the meaning of the Administrative Code § 8-102(16).

64.     The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the New York City's Human Rights Law. The Restoration Act confirmed the legislative intent to abolish "parallelism" between the Administrative Code and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 (emphasis added).

65.     Administrative Code §8-130 is to be construed broadly in favor of plaintiff to the fullest extent possible. *Albunio v. City of New York*, 16 N.Y.3d 472, 922 N.Y.S.2d 244 (N.Y. Court of Appeals, March 31, 2011).

66.     Defendants have and continue to subject plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages,

facilities, and privileges of their places of public accommodation all because of disability in violation of Administrative Code § 8-107(4).

67.     Defendants have discriminated, and continue to discriminate, against plaintiff in violation of the Administrative Code § 8-107(5)(b) by designing, creating and/or maintaining an inaccessible commercial facility/space.

68.     Defendants have subjected, and continue to subject, plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the Administrative Code § 8-107(5)(b).

69.     In violation of Administrative Code § 8-107(6), defendants have and continue to, aid and abet, incite, compel or coerce each other in each of the other defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the Administrative Code.

70.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on defendants ConEd, Rosetta, Feinrose, and Downing to repave, reconstruct, repair, and maintain the public sidewalk abutting their respective properties. As a result, each of defendant ConEd, Rosetta, Feinrose, and Downing controls, manages and operates the public sidewalk abutting their respective properties, including the portions of the sidewalk constituting the entrance/s to the Whitestone Shopping Center. The failure of defendants ConEd, Rosetta, Feinrose, and Downing to construct and maintain accessible entrances from the public sidewalk to the

Whitestone Shopping Center and their tenants' places of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

71.     Defendants discriminated against plaintiff in violation of the Administrative Code by maintaining and/or creating inaccessible commercial facilities/spaces and places of public accommodation.

72.     As a direct and proximate result of defendants' unlawful discrimination in violation of the Administrative Code, plaintiff has suffered, and continues to suffer severe emotional distress, including but not limited to humiliation, stress, embarrassment, and anxiety.

73.     Defendants' long-standing refusal to make their places of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to plaintiff's rights under the Administrative Code.

74.     By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable, or desired as patrons of their places of public accommodation.

75.     Defendants' unlawful discriminatory conduct constitutes malicious, willful and wanton violations of the Administrative Code for which plaintiff is entitled to an award of punitive damages.  Administrative Code § 8-502.

76.     By refusing to make their places of public accommodation accessible, defendants have unlawfully profited from their discriminatory conduct by collecting revenue from non-compliant spaces and pocketing the money that they should have lawfully expended to pay for fully compliant and accessible spaces.  Defendants' unlawful profits plus interest must be disgorged.

22

77.     Plaintiff has suffered damages in the amount of at least **$50,000.00 (FIFTY THOUSAND DOLLARS)** from each defendant and the total amount shall be determined at trial before a jury.

## FOURTH CAUSE OF ACTION
### (Violations of New York State Civil Rights Laws)

78.     Plaintiff realleges and incorporates by this reference all allegations set in this Complaint as if fully set forth herein.

79.     Defendants discriminated against plaintiff pursuant to New York State Executive Law.  Consequently, plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §§ 40-c and 40-d, in the amount of $500 per defendant for each and every barrier and violation.

80.     Notice of the defendants' violations and this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## FIFTH CAUSE OF ACTION
### (Common Law Negligence)

81.     Plaintiff realleges and incorporates by this reference all allegations set in this Complaint as if fully set forth herein.

82.     Each of the defendants negligently designed, constructed, operated, repaired and maintained their commercial facilities/spaces and places of public accommodation located at the Whitestone Shopping Center in a manner that has rendered their places of public accommodation inaccessible to the disabled plaintiff.

83.     At all relevant times, defendants have had a duty to design, construct, operate, repair, and maintain their commercial facilities/spaces and places of public accommodation located at the Whitestone Shopping Center, in a manner that is accessible to the disabled plaintiff, including a duty to comply with the Administrative Code.

23

84.     Defendants breached their duty by negligently designing, constructing, operating, repairing and maintaining their commercial facilities/spaces and places of public accommodation located at Whitestone Shopping Center in a manner that has rendered their commercial facilities/spaces and places of public accommodation inaccessible to the disabled plaintiff – and by violating the Administrative Code sections cited herein.

85.     Defendants' failure to design, construct, operate, repair and maintain each of their commercial facilities/spaces and places of public accommodation located at the Whitestone Shopping Center in a manner that is accessible to the disabled plaintiff has proximately caused plaintiff to be unable to enjoy full and equal access to defendants' places of public accommodation.

86.     Defendants have had actual and constructive notice that their commercial facilities/spaces and places of public accommodation located at the Whitestone Shopping Center are not accessible to the disabled.  The inaccessibility of defendants' commercial facilities/spaces and places of public accommodation is visible, open, obvious, and apparent and has existed for a sufficient length of time for the defendants to discover and remedy the numerous inaccessibility conditions.

87.     As a direct result of defendants' negligence, plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

                                    **INJUNCTIVE RELIEF**

88.     Plaintiff will continue to experience unlawful discrimination as a result of defendants' failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order defendants to alter and modify their places of public accommodation and their operations, policies, practices and procedures.

                                              24

89.     Injunctive relief is also necessary to make defendants' facilities readily accessible to and usable by plaintiff in accordance with the above-mentioned laws.

90.     Injunctive relief is further necessary to order defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, Executive Law and the Administrative Code.

## DECLARATORY RELIEF

91.     Plaintiff is entitled to a declaratory judgment concerning each of the accessibility violations committed by defendants against plaintiff and as to required alterations and modifications to defendants' places of public accommodation, facilities, goods and services and to defendants' policies, practices, and procedures.

## ATTORNEYS' FEES, EXPENSES AND COSTS

92.     In order to enforce plaintiff's rights against the defendants, plaintiff has retained counsel and is entitled to recover attorneys' fees, expenses and costs pursuant to the ADA and the Administrative Code. 42 U.S.C. §12205; 28 C.F.R. §36.505; and Administrative Code § 8-502.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court enter a judgment in favor of plaintiff and against the defendants that contains the following relief:

A. Enter declaratory judgment declaring that defendants' have violated the ADA and its implementing regulations, Executive Law and Administrative Code and declaring the rights of plaintiff as to defendants' places of public accommodation, policies, practices and procedures;

25

B. Issue a permanent injunction ordering **defendants to close and cease all business** until defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, Executive Law and Administrative Code, including but not limited to the violations set forth above;

C. Retain jurisdiction over the defendants until the Court is satisfied that the defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D. Award at least **$50,000.00 (FIFTY THOUSAND DOLLARS)** to plaintiff as Compensatory damages, per defendant, plus pre-judgment interest, as a result of defendants' violations of the New York State Executive Law and the Administrative Code of the City of New York;

E. Award at least **$50,000.00 (FIFTY THOUSAND DOLLARS)** to plaintiff as Punitive damages, per defendant, in order to punish and deter the defendants for their violations of the Administrative Code of the City of New York;

F. Award plaintiff **$500.00 (FIVE HUNDRED DOLLARS)** for each and every barrier and violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

G. Find defendants guilty of a class A misdemeanor for violating New York State Civil Rights Law pursuant to New York State Civil Rights Law § 40-d;

H. Award reasonable attorneys' fees, costs and expenses pursuant to the Administrative Code;

I. Find that plaintiff is a prevailing party in this litigation and award reasonable attorneys' fees, costs and expenses pursuant to the ADA; and

J. For such other and further relief, at law or in equity, to which plaintiff may be justly entitled.

Dated: May 22, 2012
New York, New York

Respectfully submitted,

**HANSKI LAW PRACTICE, LLC**
Attorneys for Plaintiff

By: _____
Adam S. Hanski, Esq.
110 Wall Street, 11th Floor
New York, New York 10005
Telephone: (212) 248-7400
Facsimile: (212) 248-5600
Email:ahanski@hanski-law.com